Belvidere Gas Light & Fuel Co. v. Wayland.

---

## The Belvidere Gas Light & Fuel Co. v. W. A. Wayland.

1. JUDGMENTS—*Based upon Verdicts Unsupported by the Evidence.*—A judgment based upon a verdict which is not supported by the evidence will be reversed.

2. RECOUPMENT—*Damages Caused by Negligence of Contractors.*—In a suit upon a contract to repair a gas tank for a fixed price the defendant has a right to recoup against such contract price the money necessarily expended in repairing an injury to the tank caused by the negligence of the contractors while it was being repaired.

Assumpsit, for work, labor, etc. Trial in the Circuit Court of Boone County; the Hon. CHARLES E. FULLER, Judge, presiding. Verdict and

judgment for plaintiff.   Appeal by defendant.   Heard in this court at the May term, 1898.   Reversed and remanded.   Opinion filed September 26, 1898.

## STATEMENT.

Appellant desired to have its gas holder, a large steel tank at its works at Belvidere, raised and held suspended for a considerable time while it repaired and rebuilt the mason work underneath.   It had eight screws and eight chains suitable to be used to help hold it up.   Appellee lived at Rockford and was in the business of raising and moving heavy buildings and machinery.   He inspected the screws and chains and concluded they were sufficient for the purpose.   He made the following written proposition to appellant: "I will raise the gas holder and put the same back in the holder basin in first class condition, furnish all material and labor, except the screws and chains which you now have, for the sum of $175." This proposition was accepted by appellant in writing.   Appellee began work about May 20, 1897, and raised the holder and left it suspended, and supported by timbers underneath and by screws and chains on the side.   On June 17th the gas company wrote him that all was ready for him to lower the holder.   He received the letter on June 18th.   On June 19th the holder fell during a storm of wind and rain.   Appellee arrived on June 21st.   He did certain things toward restoring the holder to its proper place and letting it down.   Appellant made certain repairs.   It paid appellee $125, and spent $67.85 in repairing the injury done by the fall (exclusive of taking the dents out of the holder, which appellant agreed to do at its own expense).   The proof was it would still cost $100 more to make the holder as good as it was before it fell.   Appellant claimed appellee was responsible for the injury, and refused to pay more under the contract.   Appellee brought suit for the $50 not paid on the contract, and recovered verdict and judgment therefor.

ROBERT W. WRIGHT, attorney for appellant.

WM. L. PIERCE and CHARLES ROACH, attorneys for appellee.

Mr. Presiding Justice Dibell delivered the opinion of the court.

We are of opinion the verdict is not supported by the evidence.

First. The metal top of the tank sank about two feet below its outer edges by its own weight, thus making a large basin on top. Three weeks before the tank fell the mechanical superintendent of the gas company told appellee he ought to put a prop under the center of the holder to raise and sustain the top so it would not hold water, for if it should rain the water which would be detained in the top as it then was, would cast such extra weight on the screws and timbers that they would be liable not to support the holder with such added weight. Appellee promised to put a prop underneath, but did not do so. His excuse was the work could not be completed with such a prop in position. The proofs showed that nearly all the work could have been done with such a prop underneath. It was the weight of the water which collected in the basin on the top of the holder during the storm which caused it to fall.

Second. Appellee did not use enough timbers underneath for support. The timbers he did use had holes in them. He used a long timber with no supports except at the ends. It became badly sprung by the weight resting upon it, and appellee was told of it and his attention called to the necessity of more supports under this timber. He did not supply the defects. The long timber broke, and the other timbers broke where the holes were, and the tank fell. Appellee used much less supporting timber than he proposed to use when he took the contract.

Third. Eight hooks and chains were furnished him to use upon the outside to assist in holding the tank in place. He only used six. They gave way and broke with the weight of the water. He should have used them all, and their added strength might have prevented the accident.

Fourth. We are of opinion the evidence clearly shows the tank fell because appellee did not properly support it, and did not so support the metal top as to leave no basin in

which water could collect during a rain. Although the contract did not in express terms say appellee was to keep the tank supported while the repairs were being made, it is plain all parties so understood and interpreted it. Appellant had a right to recoup against the contract price the money it necessarily expended in repairing the injury. Appellee claimed that after the tank fell he made a new contract with the gas company by which he was to make certain repairs and was then to be paid the full contract price, and that he made the repairs as agreed. His own testimony as to the making of such new contract is very weak, and the clear preponderance of the evidence is against it.

The judgment of the court below will be reversed and the cause remanded for a new trial.